## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT TOLEDO

| | |
|---|---|
| **FARRELL P. SPENCE** and **PAMELA S. SPENCE** 339 Hoelter Avenue Luckey, Ohio 43443 | |
| Plaintiffs, | |
| vs. | |
| **RUSHMORE LOAN MANAGEMENT SERVICES, LLC** c/o Corporation Service Company 50 West Broad Street Suite 1330 Columbus, OH 43215 | |
| **U.S. BANK, N.A.,** not in its individual capacity, but solely as trustee of REO Trust 2017-RPL1 c/o Andrew Cecere, C.E.O. 800 Nicollet Mall Minneapolis, MN 55402 | **COMPLAINT OF PLAINTIFFS FARRELL P. SPENCE AND PAMELA S. SPENCE** **(Jury Demand Endorsed Hereon)** |
| **U.S. BANK, N.A.,** not in its individual capacity, but solely as trustee of Loan Acquisition Trust 2017 RPL1 c/o Andrew Cecere, C.E.O. 800 Nicollet Mall Minneapolis, MN 55402 | |
| **MTGLQ INVESTORS, LP** c/o CT Corporation System 4400 East Commons Way Suite 125 Columbus, OH 43219 | |
| Defendants. | |

Plaintiffs, Farrell P. Spence and Pamela S. Spence (collectively, "Plaintiffs"), through

counsel, and for their complaint against Defendants Rushmore Loan Management, LLC; U.S.

Bank, N.A., not in its individual capacity, but solely as trustee of REO Trust 2017-RPL1; U.S. Bank, N.A., not in its individual capacity, but solely as trustee of Loan Acquisition Trust 2017 RPL1; and MTGLQ Investors, LP state as follows:

## WHY PLAINTIFFS ARE FILING THIS CASE

1.      Like many individuals over the past decade, Plaintiffs have encountered economic hardship. When Plaintiffs encountered problems paying their mortgage, they contacted their loan servicer at the time, HSBC Mortgage Services, Inc. ("HSBC"), to apply for and obtain a temporary loan modification. Plaintiffs performed their obligations under the modification and made the required payments, but when the temporary modification ended Defendants Rushmore Loan Management Services, LLC ("Rushmore"); U.S. Bank, N.A., not in its individual capacity, but solely as trustee of REO Trust 2017-RPL1 ("REO Trust"); U.S. Bank, N.A., not in its individual capacity, but solely as trustee of Loan Acquisition Trust 2017 RPL1 ("Loan Acquisition Trust"); and MTGLQ Investors, LP ("MTGLQ") failed and refused to honor the original terms of the mortgage loan, instead trying to collect amounts that are not due and owing under such.  REO Trust and Loan Acquisition Trust are collectively referred to hereinafter as "U.S. Bank."

## PARTIES, JURISDICTION, AND VENUE

2.      Plaintiffs are the owners of the real property and improvements thereupon located at and commonly known as 339 Hoelter Avenue, Luckey, Ohio 43443 (the "Home").

3.      Plaintiffs have lived in the Home as their primary, principal residence at all times relevant to this action and continue to maintain the Home as such.

4.      On August 26, 2005, in order to purchase the Home, Plaintiffs borrowed money and executed a note in the amount of $212,800.00 payable to M&I Bank FSB (the "Note"). To secure payment of the Note, Plaintiffs granted a contemporaneous mortgage lien on their Home (the "Mortgage"). A copy of the Note and a copy of the Mortgage are attached as ***Plaintiffs' Exhibit 1***. The Note and Mortgage are collectively referred to hereinafter as the "Loan."

5.      MTGLQ is a previous owner of the Loan, having owned the Loan from on or about April 27, 2017 through July 25, 2017.

6.      Loan Acquisition Trust is a previous owner of the Loan, having owned the Loan from on or about July 26, 2017 through June 28, 2018.

7.      REO Trust  is the present owner the Loan. U.S. Bank became the owner of the Loan on or about June 29, 2018.

8.      HSBC is the previous servicer of the Loan, having serviced the Loan at all times relevant to this action through January 31, 2017.

9.      Rushmore is the current servicer of the Loan, having acquired servicing rights to the Loan effective February 1, 2017. Rushmore has serviced  the Loan on behalf of MTGLQ and U.S. Bank as all times relevant herein.  A true and accurate copy of the "Notice of Assignment, Sale, or Transfer of Servicing" is attached as ***Plaintiffs' Exhibit 2.***

10.      At all times relevant herein, Rushmore has acted and currently acts as the agent for MTGLQ and U.S. Bank.

11.      Jurisdiction over the claims against Rushmore, MTGLQ, and U.S. Bank is conferred by 28 U.S.C. § 1331 as this action arises under the Dodd-Frank Wall Street Reform

and Consumer Protection Act ("DFA"), and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq*. ("RESPA").

12.     This action is brought to enforce regulations promulgated by the Consumer Financial Protection Bureau ("CFPB") that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.35 of Regulation X.

13.     This Court has supplemental jurisdiction to hear all state law statutory and common law claims pursuant to 28 U.S.C. § 1367.

14.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District and as the Home is located within this District.

## SUMMARY OF CLAIMS

15.     In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

16.     Specifically, on January 17, 2013, the CFPB issued RESPA (Regulation X) Mortgage Servicing Final Rules, 78 F.R. 10695 (February 14, 2013), and TILA (Regulation Z) Mortgage Servicing Final Rules, 78 F.R. 10901 (February 14, 2013), which became effective on January 10, 2014.

17.     The Loan is a "federally related mortgage loan" as defined by 12 C.F.R. § 1024.2(b).

18.     Rushmore is subject to Regulation X and does not qualify for an exception for "small servicers", as defined in 12 C.F.R. § 1026.41(e)(4), nor does Rushmore qualify for the exemption for a "qualified lender", as defined in 12 C.F.R. § 617.700.

19.     Plaintiffs assert claims for relief against Rushmore for violations of the specific rules set forth in Regulation X, as set forth *infra*.

20.     Plaintiffs assert a state law claim for breach of contract against Rushmore, MTGLQ, and U.S. Bank.

21.     Plaintiffs assert private rights of action under RESPA pursuant to 12 U.S.C. § 2605(f), and any such action provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

## THE LOAN AND LOSS MITIGATION

22.     In 2013, Plaintiffs encountered financial difficulties and contacted the servicer of the Loan at that time, HSBC, to seek loss mitigation assistance.

23.     Thereafter, on April 21, 2015, HSBC sent Plaintiffs correspondence and a proposed temporary Loan Modification Agreement (the "LMA"), which Plaintiffs timely and properly accepted, executed, and returned to HSBC. A true and correct copy of the LMA is attached as ***Plaintiffs' Exhibit 3***.

24.     HSBC countersigned the LMA on or about May 13, 2015. *Id.*

25.     The terms of the LMA explicitly provide:

> 2. **New Interest Rate**.  Effective 06/01/2015, Borrower will pay interest on the unpaid principal at a rate of 5.25% per annum for 24 modified payments.  Once 24 modified payments are made your interest rate will return to the rate in effect prior to the modification.

> 3. **Interest Rate Change Date.**  After your modification expires, your interest rate will be calculated in accordance with the original terms of your Adjustable Rate Note and the Adjustable Rate Rider to your mortgage or deed of trust (if applicable).

See ***Plaintiffs' Exhibit 3***.

26.     Plaintiffs made the required twenty-four (24) payments pursuant to the LMA and otherwise performed according to the LMA.

27.     Servicing rights to the Loan transferred to Rushmore effective February 1, 2017. See ***Plaintiffs' Exhibit 2.***

28.     On or about May 26, 2017, Rushmore erroneously began to claim via mortgage statements that the principal and interest payment owed on the Loan was $4,535.45. A copy of the mortgage statement to Plaintiffs from Rushmore dated May 26, 2017 is attached as ***Plaintiffs' Exhibit 4***.

29.     The Loan was originally amortized over thirty (30) years with an actual maturity date of September 1, 2020, approximately fifteen years from the date of origination.  See ***Plaintiffs' Exhibit 1.***  This would result in a balloon payment being due at maturity.  *Id.*

30.     Instead of amortizing the Loan over the remaining eighteen (18) years of the amortization schedule for the Loan which would have resulted in a principal and interest payment of approximately $1,344.69, Rushmore fully amortized the Loan over the three (3) years remaining until maturity.  See ***Plaintiffs' Exhibit 4***.

31.     Upon receipt of Rushmore's May 26, 2017 mortgage statement, Plaintiffs contacted Rushmore repeatedly to bring the error with respect to the principal and interest payment to Rushmore's attention and in hopes of rectifying the same.

32.     Unable to afford the higher principal and interest payment and fearing the loss of the Home, especially if forced to pay amounts in addition to those that were legitimately owed, Plaintiffs submitted a loss mitigation application and supporting documentation to Rushmore, which Rushmore received and acknowledged as complete as of October 3, 2017. See letter from Rushmore to Plaintiffs attached as ***Plaintiffs' Exhibit 5***.

33.     On October 26, 2017, Rushmore advised Plaintiffs they were approved for a loan modification pursuant to a Rushmore "proprietary program" (the "Modification Offer").   A true and accurate copy of the Modification Offer is attached as ***Plaintiffs' Exhibit 6***.

34.     The terms of the Modification Offer amortized the new "Interest Bearing Principal Balance" of $165,752.28 at the rate of 5.375% over a term of six (6) years which resulted in a principal and interest payment of $3,067.74, which was beyond their reasonable capabilities.  *Id.*

35.     It was at this point that Plaintiffs, fearing for the loss of their Home if they refused to pay amounts not due and owing and having obtained no resolution through their own efforts to have the proper principal and interest payment of the Loan acknowledged by Rushmore, sought the assistance of legal counsel.

### COUNSEL INTERVENES TO ASSIST WITH ERROR RESOLUTION

36.     By letter dated December 5, 2017, Plaintiffs, through counsel, sent Rushmore correspondence captioned "Request for Information Pursuant to Section 1026.36 of Regulation X" requesting that Rushmore provide a written explanation of why the interest rate and principal and interest amount increased for the Loan (the "RFI"). A copy of the RFI is attached as ***Plaintiffs' Exhibit 7***.

37.     Rushmore sent correspondence dated January 24, 2018, to Plaintiffs' counsel in response to the RFI (the "Response to the RFI") stating that the interest rate returned to the interest rate in effect prior to the modification and that the amortization schedule was adjusted for the balance to be paid by the maturity date of September 1, 2020.  A copy of the Response to the RFI is attached as *Plaintiffs' Exhibit 8*.

38.     On or about May 30, 2018, Plaintiffs, through counsel, sent correspondence to Rushmore captioned "Notice of Error under 12 CFR Section 1024.35" for improperly re-amortizing the Loan over the three (3) years until the maturity date of September 1, 2020 which resulted in Rushmore claiming that Plaintiffs owe a higher principal and interest payment than what is actually owed pursuant to the Loan ("NOE #1").  A copy of NOE #1 is attached as *Plaintiffs' Exhibit 9*.

39.     Through NOE #1, Plaintiffs alleged that Rushmore committed an error by failing or otherwise refusing to properly amortize  the Loan following the completion of the LMA; specifically, that Rushmore forced a default of the Loan by demanding excessive payments above and beyond what the original  loan documents as modified by the HSBC Modification required of Plaintiffs.The NOE also advised Rushmore that it was attempting to collect amounts not due.  *Id.*

40.     Having received no response to NOE #1, on or about July 11, 2018 Plaintiffs, through counsel, sent correspondence to Rushmore captioned "Notice of Error under 12 CFR Section 1024.35" for failing to respond to NOE #1 ("NOE #2").  A true and accurate copy of NOE #2 is attached as *Plaintiffs' Exhibit 10.*

41.     Rushmore responded to NOE #2 through correspondence dated September 18, 2018, asserting that NOE #2 was duplicative:

> Duplicative Notification of Error and/or Request for Information. We made this determination because your current correspondence is substantially the same as your previous correspondences [sic] which Rushmore received on August 2, 2017; December 4, 2017, December 8, 2017; February 6, 2018, and July 16, 2018, and it does not contain new and material information.  Rushmore complied with our obligation to respond to this matter with our previous correspondences [sic] to you, which were sent on September 14, 2017; January 18, 2018, January 24, 2018, and March 21, 2018.

(the "Response to NOE #2").  A copy of the Response to NOE #2 is attached as ***Plaintiffs' Exhibit 11***.

42.     On or about August 29, 2018, Plaintiffs, through counsel, sent correspondence to Rushmore captioned "Notice of Error under 12 CFR Section 1024.35" for failing to properly respond to NOE #1 and NOE #2 ("NOE #3").   A copy of NOE #3 is attached as ***Plaintiffs' Exhibit 12***.

43.     Rushmore responded to NOE #3 through correspondence dated October 17, 2018 (the "Response to NOE #3").  A true and accurate copy of the Response to NOE #3 is attached as ***Plaintiffs' Exhibit 13.***

44.     The Response to NOE #3 stated that:

> …Rushmore provided you with the enclosed correspondence dated September 18, 2018, in response to your correspondence dated July 11, 2018.  Please note that Rushmore does not have a record of receiving your correspondence dated May 30, 2018.
>
> After reviewing our system of record, it appears that the loan was not reamortized, as mentioned in our correspondence to you dated January 24, 2018.   The monthly payment amount increased as a result of the temporary modification ending and the interest rate reverting to the original Note's interest rate of 7.550%.  We regret

9

> any confusion the erroneous information may have caused you or
> your clients.  The loan has been serviced in accordance with the
> Note since the temporary modification ended in June 2017…

*Id.*

45.    Rushmore took no steps to remedy the error or correct the principal and interest

payment it claimed due and owing. Subsequent mortgage loan statements and correspondence

sent to Plaintiffs by Rushmore continued to erroneously reflect a principal and interest payment

of $4,535.45.  A true and accurate copy of mortgage statements received after May 26, 2017 are

attached as ***Plaintiffs' Group Exhibit 14.***

## IMPACT ON PLAINTIFFS

46.    Plaintiffs reached out for help when they encountered financial difficulty. In good

faith they negotiated and reached an agreement with their loan servicer, HSBC. They made the

required payments under the LMA but soon learned that their new loan servicer, Rushmore,

simply refused to honor the express terms of the LMA and the Loan.

47.    The conduct of Rushmore, MTGLQ, and U.S. Bank has had a severe impact on

Plaintiffs, emotionally, physically, and financially.

48.    Rushmore's servicing errors and indifference have had a major impact on

Plaintiffs.  As a result of Rushmore's actions, Plaintiffs are consumed by worry and frustration

over the status of the Loan.

49.    Plaintiffs have endured severe emotional distress proximately caused by the

conduct of Rushmore, MTGLQ, and U.S. Bank. This stress is driven by the daily ongoing fear

that they might lose the Home in foreclosure and be forced to leave the Home, or have to

otherwise pay  monthly payments on the Loan in an amount more than three (3) times greater

than to which they are legally obligated. Plaintiffs have had to retain and pay for counsel to

represent them in their efforts to attempt to resolve this issue without litigation.  This stress and fear has resulted in loss of sleep, anxiety, depression, embarrassment, and other significant and persistent emotional distress.  Plaintiffs currently suffer from hypertension which could be exacerbated or complicated by the ongoing stress of losing the Home due to the Defendants' breach of the Loan. Plaintiffs have also been damaged by Rushmore negatively reporting them as delinquent when they were willing and able to make the payments under the loan documents and modification.  Plaintiffs have paid for postage and legal fees to send the notices of error to Rushmore. The Plaintiffs have had to take time from their day in order to assist their counsel in the preparation of requests for information and notices of error.

50.     The actions of Rushmore, MTGLQ, and U.S. Bank, have caused Plaintiffs to incur actual damages including, but not limited to lost time, costs and expenses in attempting to have Defendants correct their errors, and, when all else failed, attorneys' fees and expenses to raise errors and try to resolve the same prior to filing the instant action.

51.     Throughout this entire ordeal, Plaintiffs have merely wanted to remain in their Home and pay the monthly amounts they expressly agreed to through the LMA and the Loan. They have repeatedly asked Rushmore to fix the problems with the Loan--problems which are readily apparent from any reasonable reading of the LMA and the Loan--and Rushmore has steadfastly failed and refused to do so.

## PATTERN AND PRACTICE OF REGULATION X VIOLATIONS

52.     Rushmore has engaged in a pattern and practice of mistreating mortgage loan borrowers and violating provisions of the Real Estate Settlement Procedure Act, 12 U.S.C. §§

2605, 2617, and the regulations promulgated thereunder at Regulation X, 12 C.F.R. part 1024 ("RESPA").

53.     At the time of the filing of this Complaint, Rushmore has had at least Five Hundred Sixty Three (563) consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgage products and at least Two Hundred Forty Two (242) such complaints identified on the CFPB's consumer complaint database as "loan servicing, payments, escrow account". Each such complaint is filed and cataloged in the CFPB's publicly accessible online database, which is located at: http://www.consume rfinance.gov/complaintdatabase/.

54.    Plaintiffs have reviewed the CFPB's consumer complaint database and has identified other alleged RESPA violations by Rushmore against other borrowers. In particular, the Plaintiffs have reviewed the fifteen (15) consumer complaints attached hereto and identified as *Plaintiffs' Exhibit 15*. The date, details, and a narrative disclosed by each consumer is set forth in each complaint. The complaints evidence conduct which demonstrates that Rushmore has engaged in a pattern and practice of violating RESPA with respect to other borrowers.

55.    At all relevant times, Rushmore acted within the scope of its authority as the agent for MTGLQ and U.S. Bank.

## COUNT ONE: AGAINST RUSHMORE, MTGLQ, and U.S. BANK

### [Breach of Contract]

56.    Plaintiffs restate and incorporate the statements and allegations contained in paragraphs 1 through 53 in their entirety, as if fully rewritten herein.

57.     The Loan, as modified pursuant to the LMA, is an enforceable contract between Plaintiffs, Rushmore, MTGLQ, and U.S. Bank.

58.     Rushmore, MTGLQ,  and U.S. Bank breached the contract by failing to honor the express terms of the LMA and the Loan, by improperly trying to collect amounts not authorized by the LMA and the Loan.

59.     Plaintiffs performed their obligations pursuant to the contract by making payment of amounts properly due and by otherwise meeting their obligation imposed by the parties' contract.

60.     Rushmore, MTGLQ,  and U.S. Bank breached the Loan contract. The breach is one of bad faith as demonstrated by the above allegations. Rushmore failed to properly process and honor the terms of the LMA offered to Plaintiffs, which they accepted and performed in good faith to the best of their abilities.

61.     Both Rushmore, MTGLQ, and U.S. Bank owed Plaintiffs a fiduciary duty to handle the LMA properly and in accordance with the parties' agreement. Rushmore, MTGLQ, and U.S. Bank breached their duty to Plaintiffs by attempting to collect amounts not due under the terms of the LMA and the Loan.

62.     Plaintiffs have suffered actual damages as detailed, *supra*, including but not limited to, the legitimate fear of losing their home to foreclosure and incurring lost time, expenses, and attorneys' fees in attempts to have Rushmore, MTGLQ, and U.S. Bank correct their breach. Plaintiffs continue to suffer economic and non-economic damages as a result of the breach including continued credit damage, emotional distress, fear, and mental anguish.

63.     Plaintiffs are entitled to actual damages, reasonable attorneys' fees and costs jointly and severally against Rushmore, MTGLQ, and U.S. Bank.

## COUNT TWO: AGAINST RUSHMORE

### [Multiple violations of 12 C.F.R. §1024.35(e) for failure to reasonably investigate and properly respond to  notices of error in violation of 12 C.F.R. §1024.35]

64.     Plaintiffs restate and incorporate the statements and allegations contained in paragraphs 1 through 53 in their entirety, as if fully rewritten herein.

65.     12 C.F.R. § 1024.35(a) provides:

> A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred.

66.     Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower."

67.     12 C.F.R.  § 1024.35(d) provides that a servicer must acknowledge in writing receiving a notice of error from a borrower within five (5) days of receipt.

68.     12 C.F.R.  § 1024.35(e)(1) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or:

> Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the

14

borrower can request such documents, and contact information, including a telephone number, for further assistance.

69.     NOE #1 meets the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a).  See *Plaintiffs' Exhibit 9*.

70.     Plaintiffs sent NOE #1 to Rushmore at their self-designated address for the receipt of notices of error pursuant to 12 C.F.R. § 1024.35(c) (the "Designated Address") and Rushmore received the same at such address.  See *Id*.

71.     Through NOE #1, Plaintiffs alleged that Rushmore committed an error by improperly amortizing the Loan over the three (3) remaining years until the maturity date. See *Plaintiffs' Exhibit 9*.

72.     Rushmore received NOE #1 at the Designated Address within a week of Plaintiffs mailing such notice.

73.     Pursuant to 12 C.F.R. § 1024.35(e)(3)(i)(C), Rushmore was required to respond to NOE #1 within thirty (30) business days of their receipt of NOE #1.

74.     Plaintiffs did not receive a response to NOE #1 within the required time frame pursuant to 12 C.F.R. § 1024.35(e)(3)(i)(C).  See *Plaintiffs' Exhibit 10.*

75.     NOE #2 meets the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a).  See *Id*.

76.     Plaintiffs sent NOE #2 to Rushmore at their self-designated address for the receipt of notices of error pursuant to 12 C.F.R. § 1024.35(c) (the "Designated Address") and Rushmore received the same at such address.  See *Plaintiffs' Exhibit 11*.

77.     Through NOE #2, Plaintiffs alleged that Rushmore committed an error by failing or otherwise refusing to properly respond to NOE #1. See *Plaintiffs' Exhibit 10*.

78.     Rushmore received NOE #2 at the Designated Address on or about July 16, 2018. See ***Plaintiffs' Exhibit 11.***

79.     Pursuant to 12 C.F.R. § 1024.35(e)(3)(i)(C), Rushmore was required to respond to NOE #2 within thirty (30) business days of their receipt of NOE #2.

80.     The Response to NOE #2 failed to satisfy the requirements of either 12 C.F.R. §§ 1024.35(e)(1)(A) or 1024.35(e)(1)(B). See ***Id.***

81.     Rushmore, through the Response to NOE #2, did not acknowledge that any of the alleged errors occurred and state the date of the correction of any such errors.  *Id*.

82.     Rushmore, instead, through the Response to NOE #2, stated that NOE #2 was a duplicative notice of error and/or request for information and that Rushmore had previously responded to the matter.  See ***Plaintiffs' Exhibit 11***.

83.     It is clear, however, that Rushmore did not conduct a reasonable investigation into the errors alleged by and through NOE #2 prior to claiming that NOE #2 was a duplicate in the Response to NOE #2.

84.     Rushmore, through the Response to NOE #2, inexplicably claimed that NOE #2 was a duplicate notice of error despite NOE #1 being the first notice of error made by Plaintiffs to Rushmore regarding the amortization of the Loan after the LMA ended. See ***Plaintiffs' Exhibits 9 and 10***.

85.     Had Rushmore conducted a reasonable investigation, which would have at a bare minimum included a reading of the enclosures attached to NOE #2, it would have been readily apparent that Rushmore had not previously responded to the errors raised in NOE #1 and NOE #2.

86.     As a result of the contents of the Response to NOE #2, Plaintiffs, through counsel, sent NOE #3 to Rushmore.

87.     NOE #3 meets the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a).  See *Plaintiffs' Exhibit 12*.

88.     Plaintiffs sent NOE #3 to Rushmore at their self-designated address for the receipt of notices of error pursuant to 12 C.F.R. § 1024.35(c) and Rushmore received the same at such address.  See *Plaintiffs' Exhibit 13*.

89.     Through NOE #3, Plaintiffs alleged that Rushmore committed an error by failing or otherwise refusing to properly respond to NOE #1 and NOE #2. See *Plaintiffs' Exhibit 12*.

90.     Rushmore received NOE #3 at the Designated Address on or about September 4, 2018.  See *Plaintiffs' Exhibit 13.*

91.     Pursuant to 12 C.F.R. § 1024.35(e)(3)(i)(C), Rushmore was required to respond to NOE #3 within thirty (30) business days of their receipt of NOE #3.

92.     The Response to NOE #3 failed to satisfy the requirements of either 12 C.F.R. §§ 1024.35(e)(1)(A) or 1024.35(e)(1)(B). See *Id.*

93.     Rushmore, through the Response to NOE #3, did not acknowledge that any of the alleged errors occurred and state the date of the correction of any such errors.  See *Plaintiffs' Exhibit 13.*.

94.     Rushmore, instead, through the Response to NOE #3, stated that it had no record of receiving NOE #1 and that the loan was not reamortized, as mentioned in the Response to the RFI.  See *Id.*

95.     It is clear, however, that Rushmore did not conduct a reasonable investigation into the errors alleged by and through NOE #3 prior to claiming that no such errors occurred in the Response to NOE #3.

96.     Rushmore, through the Response to NOE #3, inexplicably claimed that it had no record of receiving NOE #1 despite NOE #1 being enclosed with NOE #2, despite claiming NOE #2 was duplicative of NOE #1 through the Response to NOE #2, and further claimed that the sole reason for the payment increase was due to the interest rate reverting back to 7.550% due to the expiration of the temporary interest rate reduction under the LMA.  See ***Plaintiffs' Exhibits 10 and 13***.

97.     Had Rushmore conducted a reasonable investigation, which would have at a bare minimum included a reading of the terms of the Loan and enclosures attached to NOE #2, it would have been readily apparent that Rushmore had at minimum previously received NOE #1 as an enclosure attached to NOE #2 and that the Loan should not have been fully amortized over the remaining three (3) years until maturity as this unilaterally removed the provision of the Loan that resulted in there being a balloon payment due at maturity.

98.     To this date, Rushmore has failed to correct the errors asserted through NOE #1, NOE #2, and NOE #3.

99.     Rushmore's actions are part of a pattern and practice of behavior in violation of Plaintiff's' rights and the rights of other similarly situated borrowers and in violation of Rushmore's obligations under Regulation X of RESPA.  Rushmore's pattern and practice as such is evidenced by their consistent refusal to appropriately respond to and correct the errors Plaintiffs alleged through NOE #1, NOE #2, and NOE #3, and the other written and verbal

communications from Plaintiffs notifying Rushmore of such errors and seeking correction of the same as further described, *supra*.

100.    Plaintiffs have suffered damages as a direct and proximate result of Rushmore's actions including incurring legal fees and expenses in the preparation and mailing of NOE #1, NOE #2, and NOE #3, and, ultimately, for the preparation, filing, and prosecution of this case to remedy Rushmore's wrongful conduct.

101.    Additionally, Plaintiffs have suffered, and continue to suffer, significant damages including other legal expenses, other economic loss, as well as anxiety, loss of sleep, and emotional and mental distress, as further described, *supra*.

102.    As a result of Rushmore's actions, Rushmore is liable to Plaintiffs for actual damages, statutory damages, costs, and attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiffs, respectfully request that this Court enter an order granting Judgment against Defendants Rushmore, MTGLQ, and U.S. Bank for the following:

A.    For actual damages for each Plaintiff against Defendants Rushmore, MTGLQ, and U.S. Bank jointly and severally, as applicable, as to all allegations contained in Count One;

B.    For statutory damages of Two Thousand Dollars ($2,000.00) against Defendant Rushmore for each and every violation of 12 C.F.R. §1024.35 as alleged in Count Two;

C.    For costs and reasonable attorney fees against Defendants, jointly and severally, as applicable, as to all allegations contained in Count One and Two; and,

D.      For all other relief this Court may deem just and proper.

Respectfully submitted,

/s/ Whitney P. Horton_____
Whitney P. Horton (0098224)
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
**DannLaw**
P.O. Box 6031040
Cleveland, OH 44103
Ph. (216)373-0539
F. (216)373-0536
notices@dannlaw.com

---

## JURY DEMAND

---

Plaintiff hereby demands a trial by jury for all causes of action contained in the foregoing

Complaint.

Dated: April 5, 2019                          Respectfully submitted,

/s/ Whitney P. Horton_____
Whitney P. Horton (0098224)
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
**DannLaw**
P.O. Box 6031040
Cleveland, OH 44103
Ph. (216)373-0539
F. (216)373-0536
notices@dannlaw.com